UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TWENTIETH CENTURY FOX FILM CORPORATION<br><br>*Plaintiff,*<br><br>-against-<br><br>JMC POP UPS LLC,<br>JOSEPH MCCULLOUGH,<br>AND SAMANTHA SHUTTER,<br><br>*Defendants.* | Case No.:<br><br>COMPLAINT FOR COPYRIGHT INFRINGEMENT, TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND CYBERSQUATTING<br><br>DEMAND FOR JURY TRIAL, REQUEST FOR PERMANENT INJUNCTIVE RELIEF |

Plaintiff Twentieth Century Fox Film Corporation ("Plaintiff"), by and through its undersigned attorneys, alleges as follows:

**INTRODUCTION**

1.      Plaintiff files this action to combat the willful and intentional infringement of its intellectual property rights by JMC Pop Ups LLC, Joseph McCullough, and Samantha Shutter (collectively, "Defendants" or "JMC Pop Ups").

2.      Defendants own and operate a business which provides bar and restaurant services in the form of a temporary or pop-up themed Moe's Tavern ("Moe's Pop-Up") copied directly from the fictional Moe's Tavern set and associated characters in Plaintiff's 35-year animated television show broadcast *The Simpsons*.

3.      For months, Plaintiff has attempted to resolve this matter without litigation. Plaintiff has repeatedly requested that Defendants discontinue their unauthorized use of Plaintiff's intellectual property, and Defendants falsely promised they would do so.

Instead, Defendants merely feigned willingness to cooperate while continuing and expanding their infringing business operations.

4.      Plaintiff files this action to halt Defendants' infringement of Plaintiff's intellectual property rights and seek a permanent injunction, damages, costs, and attorneys' fees as authorized by the Copyright Act and Lanham Act.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, as Plaintiff's claims arise under the Copyright Act (17 U.S.C. § 101 *et. seq.*) and Lanham Act, as amended (15 U.S.C. § 1051 *et. seq*).

6.      Venue is proper within the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b), 1400(a).

## THE PARTIES

### PLAINTIFF

7.      Plaintiff Twentieth Century Fox Film Corp. ("Plaintiff"), is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in Los Angeles, California.

8.      Plaintiff and certain affiliated entities engage in businesses that include production, broadcast, and distribution of *The Simpson*s animated television program and *The Simpsons Movie*.  Plaintiff on its own, and through its affiliated entities, also engages in merchandising and licensing the characters and elements associated with *The Simpsons* television program and *The Simpsons Movie*. These merchandising and licensing businesses span a variety of goods and services, including apparel, bags, accessories, and

novelty items, as well as a licensed and approved Moe's Tavern restaurant and bar operated at Universal Studios locations in Florida and California.

9. First debuting on December 17, 1989, Plaintiff's *The Simpsons* television show is regarded as the longest running animated television show, American sitcom, and American scripted primetime television series. *The Simpsons*' well known characters and elements include the Simpson family (Bart, Homer, Marge, Lisa, and Maggie), its legion of secondary characters including, but not limited to, Principal Seymour Skinner, Chief Clancy Wiggum, Krusty the Clown, Ned Flanders, Montgomery Burns, Milhouse Van Houten, Apu Nahasapeemapetilon, Sideshow Bob, and Spider-Pig; as well as its fictional locations and sets (*e.g.,* Moe's Tavern, the fictional town of Springfield, Springfield Nuclear Power Plant, Springfield Elementary School, Kwik-E-Mart, Krusty Burger, and Lard Lad Donuts). Moe's Tavern, operated by the fictional character Morris "Moe" Szyslak, is well known and exclusively associated with *The Simpsons* television show and its related licensed products and services. *The Simpsons Movie* – which incorporates the same sets, characters, locations, and story lines as the animated series – was released in 2007 for world-wide distribution with box office earnings of over $536 million USD.

10. In Plaintiff's television broadcasts of *The Simpsons* over the past 35 years, Moe's Tavern and Moe Szyslak have appeared in no fewer than 186 episodes, beginning with the very first broadcast of *The Simpsons* on December 17, 1989, in an episode titled *Simpsons Roasting on an Open Fire* and continuing through Season 35.

11. Plaintiff's Moe's Tavern is known by its distinctive exterior façade, which features the following:

a.   Beige building;

b.   Diagonal purple boarding accent truss trim across the front roofline of the building;

c.   Brown 'swing' door front entrance with purple boarding accent trim, and brass porthole window and push-plate;

d.   "MOE'S" sign directly above the front entrance door; and

e.   Two windows with purple boarding accent trim on either side of the front door, featuring red/orange and green diamond patterned stained glass.

12.   The interior of Plaintiff's Moe's Tavern features:

a.   Long bar running parallel to the right wall, upon which sits a pink television set and large clear jar of pickled eggs;

b.   Counter extending along the right wall, upon which liquor bottles are displayed;

c.   Round bar stools with red vinyl seats and metal bases along the length of the bar;

d.   Long rectangular mirror on the wall behind the bar;

e.   Red vinyl-covered booths and tables running the length of the left wall;

f.   Out of order jukebox;

g.   Coin-operated "Love Tester" arcade machine;

h.   Pool table;

    i.     Square neon sign which reads "BeeR IS THE ANSWER";

    j.     Sports pennants from the local Springfield teams like the Isotopes, Springfield Atoms, and PinPals (the Moe's Tavern sponsored bowling team of Homer Simpson, Moe Szyslak, Apu Nahasapeemapetilon, and Mr. Burns) hanging on the walls;

    k.    Duff Beer memorabilia (including posters, Duffman images, advertisements, and other promotional items);

    l.     "Mount Lushmore" wall of framed photos identifying Moe's Tavern's most frequent patrons – Homer Simpson, Barney Gumble, Carl Carlson, and Lenny Leonard; and

    m.   Moe Szyslak's office located in the women's rest room.

13.    Plaintiff owns and/or exclusively controls numerous properties related to *The Simpsons* and *The Simpsons Movie,* including, but not limited to, the creative elements, characters, plots, sets, and set dressings identified above, for which it has obtained Certificates of Copyright Registration with the U.S. Copyright Office (collectively, "Plaintiff's Copyrights"). A representative, non-exhaustive list of such copyrighted works with relevant character excerpts is attached as Exhibit 1-A.

14.    Plaintiff owns all rights, title, and interest in and to certain trademarks related to *The Simpsons*, which are duly registered with the U.S. Patent and Trademark Office and/or established through Plaintiff's use in commerce in the United States (collectively, "Plaintiff's Trademarks"). A representative, non-exhaustive list of such federally registered trademarks is attached as Exhibit 2-A.

15.     The merchandising and licensing businesses of Plaintiff and its affiliates include the use in commerce of Plaintiff's Trademarks. As a result of widespread advertising and sales by Plaintiff, its affiliates, and/or respective licensees, as well as longstanding consumer recognition and acceptance of *The Simpsons* animated series, Plaintiff's Trademarks are powerful source identifiers of, and for, Plaintiff's authorized products and services. Plaintiff's Trademarks are each inherently distinctive and/or have acquired secondary meaning in the minds of consumers. All authorized merchandising and licensing of Plaintiff's Trademarks is subject to Plaintiff's control over such use, including the quality of the licensed goods and services.

16.     Plaintiff's Copyrights and Plaintiff's Trademarks will collectively be referred to as "Plaintiff's Properties."

DEFENDANTS

17.     Defendant JMC Pop Ups LLC ("JPL"), is a limited liability company organized under the laws of the State of Pennsylvania, operating, and doing business in this judicial district, with a principal location at 38 Carriage Dr., Media, Pennsylvania 19063.

18.     Defendant Joseph McCullough ("Defendant McCullough") is, upon information and belief, an individual residing at 38 Carriage Dr., Media, Pennsylvania 19063, and doing business in this judicial district as the founder, manager, and a controlling force in the operations of JPL. Upon Plaintiff's information and belief, Defendant McCullough has:

a.     The right and ability to supervise, or otherwise control, the infringing

6

activities alleged herein;

b.   A direct financial interest in such infringing activities;

c.   Knowledge, or reason to know, of such infringing activities; and

d.   Taken actions that contributed to such infringing activities.

19.   Defendant Samantha Shutter ("Defendant Shutter") is, upon information and belief, an individual doing business in this judicial district as a controlling force in the operations of JPL. Upon Plaintiff's information and belief, Defendant Shutter has:

a.   The right and ability to supervise, or otherwise control, the infringing activities alleged herein;

b.   A direct financial interest in such infringing activities;

c.   Knowledge, or reason to know, of such infringing activities; and

d.   Taken actions that contributed to such infringing activities.

## FACTUAL ALLEGATIONS

### Defendants' Infringing Conduct

20.   Defendants own and operate a business that provides restaurant and bar services via the Moe's Pop-Up, which Defendants have copied and reproduced directly from Plaintiff's *The Simpsons*, specifically, *The Simpsons* characters, Moe's Tavern exterior and interior set dressing, art and set designs tied to specific *The Simpsons* episodes involving Moe's Tavern as a plot point and/or narrative, as well as other trademarks, and original copy and art related to *The Simpsons* and Moe's Tavern character (the "Infringing Services"). Defendants market and advertise such Infringing Services through their commercial websites located at:

a.   moespopup.com (*see* Exhibit 3-A);

b.   moesboardwalk.com (*see* Exhibit 3-B);

c.   thedankpopup.com (*see* Exhibit 3-C); and

d.   moestavernpopup.com (which redirects to thedankpopup.com)



[Source: moespopup.com]

(collectively, "JMC Sites"), as well as various social media accounts on Facebook, Instagram, and Twitter including, but not limited to:

a.   facebook.com/moespopupspringfield (*see* Exhibit 4-A);

b.   facebook.com/p/JMC-Pop-Ups-llc-100068733940254 (*see* Exhibit 4-B);

c.   facebook.com/joe.mccullough.73 [Def. Joseph McCullough Facebook Page] (*see* Exhibit 4-C);

d.   facebook.com/profile.php?id=100076239169665   [Def.   Samantha (Sam) Shutter Facebook Page] (*see* Exhibit 4-D);

e.   instagram.com/moespopup (*see* Exhibit 5); and

f.   twitter.com/moespopup (*see* Exhibit 6).

(collectively, "JMC Social Media").

21.     To further trade upon and associate the unauthorized Moe's Pop-Up with Plaintiff's *The Simpsons*, Defendants also manufacture, distribute, market, sell, and offer to sell unlicensed and infringing merchandise, which includes apparel, bags, hats, pins, keychains, insulated beer can coolers, and related memorabilia (the "Infringing Goods"). Such Infringing Goods are offered for sale and sold at the unauthorized Moe's Pop-Up locations, as well as via the JMC Sites (*see* Exhibit 7-A) and an Etsy store identified as WePopCulture (*see* Exhibit 7-B), all of which are operated by Defendants.



[Source: moespopup.com]                    [Source: WePopCulture Etsy.com Shop]

22.     In providing such Infringing Services and Infringing Goods, Defendants trade on Plaintiff's Properties in a wholesale fashion to connect Defendants' unauthorized and unapproved services and goods with Plaintiff's authorized counterparts.

23.     Plaintiff placed Defendants on express notice to cease such infringing conduct in February 2024. Notwithstanding this notice, Defendants have continued to sell, offer for sale, and market their unauthorized bar and restaurant services, and Infringing Goods, in an ongoing effort to trade on Plaintiff's goodwill by confusing and defrauding unsuspecting consumers.

24.     The Infringing Services are offered in the form of a studied reproduction of

the Moe's Tavern set and related characters utilized in *The Simpsons* television show over the past 35 years.

25.    Defendants' unauthorized Moe's Pop-Up includes an exterior façade consisting of:

a.    Beige 'building;'

b.    **Diagonal** purple boarding accent truss trim across the front roofline of the 'building;'

c.    **Brown** 'swing' door front entrance with 'brass' porthole 'window' and push-plate;

d.    "MOE'S" sign directly above the front entrance door; and

e.    Two windows with purple boarding accent trim on either side of the front door, featuring orange and green diamond patterned 'stained glass.'

| ***The Simpsons* Moe's Tavern** | **Defendants' Moe's Tavern Pop-Up** |
|---|---|
|  [Source: *The Simpsons* Core Guide 2018 – Style Guide] | [Source: *The Simpsons and Kelsey Grammer All in 1 Utica Location: Moe's Tavern Pop Up Starts This Week*, WKTV.com (Oct. 26, 2023)] |

26.   The interior of Defendants' Moe's Pop-Up includes:

    a.   Long bar running parallel to the right wall, upon which sits a pink television set and large clear jar of pickled eggs (*see* Exhibit 8-A);

    b.   Round bar stools with red vinyl seats and metal bases along the length of the bar (*see* Exhibit 8-A);

    c.   Pool table (*see* Exhibit 8-A);



[Source: *Moes Tavern The Simpsons Pop Up Wildwood NJ Experience & Review Best of NJ Wildwood Boardwalk FTV*, Family Time Vlogs YouTube.com Channel (Jul. 19, 2022)]

    d.   Counter extending along the right wall upon which liquor bottles are displayed (*see* Exhibit 8-B);

    e.   Long mirror on the wall behind the bar (*see* Exhibit 8-B);

f.   Red vinyl-covered booths and tables running the length of the left wall (*see* Exhibit 8-C);



[Source: *Moes Tavern The Simpsons Pop Up Wildwood NJ Experience & Review Best of NJ Wildwood Boardwalk FTV*, Family Time Vlogs YouTube.com Channel (Jul. 19, 2022)]

g.   Jukebox with an "Out of Order" sign taped to the front, which also depicts an unauthorized reproduction of the Moe Szyslak character (*see* Exhibit 8-D);



[Source: Moe's Pop-Up Instagram Page]

h.   "Love Tester" arcade machine (*see* Exhibit 8-E);



i.   Square neon sign which reads "BeeR IS THE ANSWER" (*see* Exhibit 8-F);



j.   Sports pennants from the local Springfield teams (Isotopes, Springfield Atoms, and PinPals) hanging on the walls (*see* Exhibit 8-G);

k.    Duff Beer memorabilia (*e.g.,* posters, Duffman images, advertisements, and other promotional items) (*see* Exhibit 8-H);



[Source: Moe's Pop-Up Instagram Page]

l.    Moe Szyslack's office located in the women's restroom (*see* Exhibit 8-I); and

m.    Wall of framed photos identifying various *The Simpsons* characters (*e.g.,* Homer Simpson, Duffman, Barney Gumble, Principal Skinner, Chief Wiggum, Montgomery Burns, Krusty the Clown, Ned Flanders, Milhouse Van Houten, Sideshow Bob, Apu Nahasapeemapetilon, Mayor Quimby, etc.) (*see* Exhibit 8-J).



27.     The interior of Defendants' Moe's Pop-Up also includes various set dressing and decorations which counterfeit and reproduce trademarks and other protectible elements of *The Simpsons* franchise. Such set dressing and/or decorations include, but are not limited to:

a.     Krusty the Clown "Krusty Burger" food service station (*see* Exhibit 9-A);

b.     Krusty the Clown poster and three-dimensional art promoting "Flaming Moe's" [a theme featured throughout *The Simpsons* series, originating from a cocktail created by Moe Szyslak and/or Homer Simpson] (*see* Exhibit 9-A);



    c.    Boxes labeled "KRUSTY'S NON NARKOTIC COUGH SYRUP FOR KIDS" featuring the unauthorized image of Krusty the Clown, with a prominent shipping address of "Moe's Tavern, 25 Walnut St., Springfield USA" (*see* Exhibit 9-B);



    d.    *The Simpsons* posters and counter cards (*see* Exhibit 9-C); and



    e.    Three-dimensional Spider-Pig character photo backdrop (*see* Exhibit 9-D).

28.    Eliminating any doubt as to whom Defendants are copying, and otherwise furthering the connection between Moe's Pop-Up and Plaintiff's *The Simpsons*, Moe's Pop-Up workers are also costumed as *The Simpsons* characters (*e.g.,* Marge Simpson, Moe Szyslak, Duffman, and Sideshow Bob). *See* Exhibit 10.

29.    To continue the association and connection to *The Simpsons*, when purchasing tickets to Moe's Pop-Up through any of the JMC Sites, customers are offered three different admission packages, the most expensive of which is "The Full Homer."



[Source: moespopup.com]

30.    In addition to admission to Moe's Pop-Up, The Full Homer package includes a swag bag consisting of an infringing *The Simpsons* shirt, infringing *The Simpsons* drawstring bag, plus a combination of licensed and unlicensed Duff Beer and Moe's Tavern branded merchandise (*e.g.*, insulated beer can coolers, keychains, pins, patches, decals, magnets, and bottle openers). *See* Exhibit 11.



31.     Defendants' Infringing Goods include The Full Homer merchandise sold in connection with the admission ticket, as well as other apparel, bags and related merchandise bearing unauthorized reproductions of Plaintiff's Properties, as sold at the Moe's Pop-Ups, and through the JMC Sites and WePopculture Etsy.com storefront.

32.     In a clear effort to further connect Moe's Pop-Up with *The Simpsons*, when selling and offering for sale the Infringing Goods, Defendants regularly commingle such Infringing Goods with authorized and/or licensed *The Simpsons* merchandise, thus fostering more confusion amongst the public. *See* Exhibit 12.

33.     Additionally, Defendants market and advertise their Moe's Pop-Up with large exterior hanging signs and photo backdrops that reproduce *The Simpsons* characters, as well as sets or fictional locations identified in the art and narrative of various *The Simpsons* episodes (*e.g.,* The Nag and Weasel, Flaming Moe's, Phineas Q. Butterfat's Ice Cream Parlor, Uncle Moe's Family Feedbag, Mo's, and a 15 ft. Duff beer can inflatable). *See* Exhibit 13.



[Source: *We visited the Moe's Tavern Pop Up Event at the Springfield Mall,*
Krazy Joe Adventures YouTube.com Channel (Oct. 10, 2022)]

34.     Defendants further copy and reproduce Plaintiff's Properties, and ultimately monetize such unauthorized use through selling the Infringing Goods and providing the Infringing Services, specifically, charging for admission and The Simpsons-themed food and beverages (e.g., Flaming Moe drink, Krusty Burger, Barney's Mozzarella Sticks, Marge's Spicy Chicken Wings, and the Clogger Burger). As noted by Defendant Shutter in a quote published in the Utica Observer-Dispatch, on October 19, 2023, concerning Defendants' Moe's Pop-Up:

> What makes us special is the fact we pop up for a short period of time, and you have to get your tickets to come see it, because we break it down and move to the next town" Shutter said. "It's just not something that would work as a permanent location. I mean, if you want a permanent Moe's, Universal [Studios Florida] does that very well, but we bring Springfield to everyone else who can't get there.

See Exhibit 14.

35.     Despite being on actual and constructive notice of Plaintiff's exclusive rights to The Simpsons, Defendants have continued their deliberate copying and trading upon Plaintiff's Properties. In fact, since February 1, 2024, when Plaintiff first requested that Defendants stop misusing Plaintiff's Properties, Defendants:

a.      held another eighteen (18) Moe's Pop-Up events in at least two (2) separate locations;

b.      continue to advertise at least eleven (11) new locations for Moe's Pop-Up events scheduled through 2024 (see Exhibit 15-A);

c.      expanded their inventory of infringing décor and set dressing featuring The Simpsons characters and Moe's Tavern interior décor

found at the Moe's Pop-Up events (see Exhibit 15-B); and

d.    added new Infringing Goods manufactured by, or at the direction of, JMC Pop Ups and subsequently sold and offered such goods for sale at, or otherwise in conjunction with, the Moe's Pop-Up events (see Exhibit 15-C).

36.    On or around May 24, 2024, Defendants expanded the scope of their commercial operations to include pop-up events copying or otherwise trading upon characters, locations, and set dressing related to the Bob's Burgers animated series, which is also owned and/or exclusively controlled by Plaintiff. Such actions by Defendants are hereby incorporated by reference into the term "Infringing Services," as previously defined. See supra p. 8. Defendants' Infringing Services include the unauthorized use of copyrighted properties (see Exhibit 1-B) and trademarks (see Exhibit 2-B) related to the Bob's Burgers animated series. The copyrighted properties set forth in Exhibit 1-B are hereby incorporated by reference into the term "Plaintiff's Copyrights" as previously defined. See supra p. 6. The trademarks set forth in Exhibit 2-B are hereby incorporated by reference into the term "Plaintiff's Trademarks" as previously defined. See supra p. 6. Defendants market and advertise these expanded Infringing Services through their seymoursbaypopup.com commercial website (see Exhibit 16-A) and the JMC Social Media (see Exhibit 16-B). Seymoursbaypopup.com is hereby incorporated by reference into the term "JMC Sites," as previously defined. See supra p. 9.

37.    Defendants' unauthorized commercial activity can only be deemed a willful violation of Plaintiff's Properties and exclusive rights, intending to harm Plaintiff,

and for direct pecuniary gain by JMC Pop Ups.

COUNT I – COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 101 et seq.)

38.     Plaintiff repeat each allegation set forth in Paragraphs 1-13 and 16-37 above, as if fully set forth herein.

39.     Plaintiff owns all right, title, and interest in Plaintiff's Copyrights. Further, Plaintiff has complied in all respects with the provisions of the Copyright Act, and holds valid copyright registrations in Plaintiff's Copyrights, including those listed in Exhibit 1.

40.     Defendants have made unauthorized commercial uses, including, without limitation, unauthorized reproductions and/or copies, distribution, and public displays of Plaintiff's Copyrights as part of their presentation, marketing, offer for sale and sale of the Infringing Services and Infringing Goods. Representative images of Defendants' unauthorized uses of Plaintiff's Copyrights are alleged above and also shown more fully on Exhibits 1, and 3-16.

41.     Defendants had access to Plaintiff's Copyrights, and many of the designs utilized in presenting, marketing, offering for sale and sale of the Infringing Services and Infringing Goods are substantially similar, if not identical, to Plaintiff's Copyrights.

42.     Without Plaintiff's consent, Defendants have intentionally infringed and continue to infringe Plaintiff's Copyrights.

43.     As a result, Defendants have engaged in copyright infringement pursuant to 17 U.S.C. § 501. Further, Defendants' conduct constitutes willful copyright infringement pursuant to 17 U.S.C. § 504(c)(2).

44.     Defendants' conduct has injured Plaintiff in a monetary amount to be

determined at trial and has caused, and will continue to cause, irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law. As such, Plaintiff seeks the following remedies: a) injunctive relief pursuant to 17 U.S.C. § 502; b) Defendants' profits or statutory damages pursuant to 17 U.S.C. § 504(a); and c) Plaintiff's costs, including attorneys' fees, in prosecuting this action pursuant to 17 U.S.C. § 505. Further, because Defendants' infringement has been—and continues to be—willful and intentional in nature, Plaintiff may, at its election, recover the maximum amount of statutory damages for each infringed work in accordance with 17 U.S.C. § 504(c)(2).

COUNT II – TRADEMARK INFRINGEMENT AND TRADEMARK<br>COUNTERFEITING (15 U.S.C. § 1114)

45.     Plaintiff repeats each allegation set forth in Paragraphs 1–12 and 14-37 above, as if fully set forth herein.

46.     Plaintiff is the owner of Plaintiff's Trademarks, including the federal registrations referenced in Exhibit 2. Each of these trademark registrations is in full force and effect.

47.     Notwithstanding Plaintiff's well-known, common law and statutory rights, Defendants have, and continue to, knowingly use in commerce unauthorized reproductions, copies, and/or colorable imitations of Plaintiff's Trademarks in conjunction with the presentation, sale, offering for sale, distribution, and/or advertising of the Infringing Services and Infringing Goods, as shown more fully on Exhibits 2 - 16. Accordingly, Defendants have engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114.

48.     Defendants' unauthorized use of Plaintiff's Trademarks constitutes

trademark infringement in violation of 15 U.S.C. § 1114, in that such use is likely to cause confusion, deception, and mistake among the consuming public that Plaintiff sponsors, approves, or is otherwise associated with Defendants' business and Infringing Services and Infringing Goods.

49.     Defendants' unlawful actions as described herein, are willful and intentional within the meaning of 15 U.S.C. §§ 1114, 1117. These acts have been, and continue to be, undertaken with the intention of trading upon the notoriety and invaluable goodwill established by Plaintiff.

50.     Defendants' trademark infringement has injured Plaintiff in a monetary amount to be determined at trial. Defendants' conduct has also caused, and will continue to cause, irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law. As such, Plaintiff seeks the following remedies: a) injunctive relief pursuant to 15 U.S.C. § 1116; b) Defendants' profits or statutory damages pursuant to 15 U.S.C. § 1117(a-c); and c) Plaintiff's reasonable attorneys' fees in prosecuting this action pursuant to 15 U.S.C. § 1117(a). Further, because Defendants' infringing conduct has been, and continues to be, willful and intentional in nature, Plaintiff, at its election, is entitled to an enhanced damages award in accordance with 15 U.S.C. § 1117(a-c).

### COUNT III – UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

51.     Plaintiff repeat each allegation set forth in Paragraphs 1-12, 14-37, and 46-50 above, as if fully set forth herein.

52.     Plaintiff's Trademarks have acquired secondary and distinctive meaning. The consuming public has come to identify Plaintiff's Trademarks with Plaintiff and its

affiliated companies, and with the goods and services offered by Plaintiff.

53.     Defendants' use of Plaintiff's Trademarks without authorization, constitutes the use of false or misleading designations of origin and/or the making of false or misleading representations of fact in violation of 15 U.S.C. § 1125(a). Among other things, such use is likely to cause confusion, deception, and mistake among the consuming public as to the source, approval, connection, association, and/or sponsorship of the Infringing Services and Infringing Goods presented, sold, and offered for sale by Defendants. To further confuse consumers into thinking that Plaintiff is associated with the Moe's Pop-Up and the Infringing Services, Defendants have reproduced Plaintiff's Trademarks in conjunction with their marketing, advertising, promotional material, and online content. See Exhibits 2 - 16.

54.     Defendants' unlawful actions as described herein, are willful and intentional within the meaning of 15 U.S.C. §§ 1114, 1117. These acts have been, and continue to be, intended to trade upon the notoriety and invaluable goodwill established by Plaintiff.

55.     Defendants' trademark infringement has injured Plaintiff in an amount to be determined at trial and has caused, and will continue to cause, irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law. As such, Plaintiff seeks the following remedies: a) injunctive relief pursuant to 15 U.S.C. § 1116; b) Defendants' profits pursuant to 15 U.S.C. § 1117(a); and c) Plaintiff's reasonable attorneys' fees in prosecuting this action pursuant to 15 U.S.C. § 1117(a). Further, because Defendants' infringing conduct has been, and continues to be, willful and intentional in nature,

Plaintiff, at its election, is entitled to an enhanced damages award in accordance with 15 U.S.C. § 1117(a).

## COUNT IV – VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d))

56.    Plaintiff repeats each allegation set forth in Paragraphs 1-12, 14-37, and 46-55 above, as if fully set forth herein.

57.    Defendants' unlawful actions as described herein, are in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A).

58.    Defendants have registered, trafficked in, and used the domain names moespopup.com, moesboardwalk.com, and moestavernpopup.com, which are confusingly similar to, and dilutive of, the MOE'S TAVERN word mark, with a bad-faith intent to profit from Plaintiff's goodwill in the mark.

59.    Plaintiff has sustained irreparable harm, and unless Defendants are enjoined from such unauthorized use, will continue to sustain irreparable harm as a result of Defendants' wrongful conduct in violation of 15 U.S.C. § 1125(d)(1)(A).

60.    Plaintiff seeks the following remedies:  a) injunctive relief pursuant to 15 U.S.C. § 1125(d); and b) actual damages and Defendants' profits or, at Plaintiff's election, statutory damages pursuant to 15 U.S.C. § 1117(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands entry of a judgment against Defendants and for the following relief:

A.    Permanently enjoin and restrain Defendants, their officers, agents, servants, employees, attorneys, and all those in active concert or participation from:

1.    Manufacturing, advertising, marketing, promoting, offering for sale, selling, and/or distributing the Infringing Services and Infringing Goods identified herein, bearing or utilizing Plaintiff's Properties, or otherwise utilizing Plaintiff's Properties in conjunction with the sale, offer for sale, and marketing of services and goods not authorized by Plaintiff, as identified this Complaint;

2.    Using Plaintiff's Copyrights or Plaintiff's Trademarks in any unauthorized manner, including in conjunction with the provision, sale, offer for sale, marketing, and/or distribution of bar and restaurant services, event services, and associated merchandise;

3.    Making any false statement or representation to suggest that Defendants or their Infringing Services and Infringing Goods are affiliated with, or sponsored by, Plaintiff and reproducing Plaintiff's Properties in conjunction with the Infringing Services, or Defendants' marketing, advertising, promotional material, and online content;

4.    Engaging in any other activity constituting unfair competition with, or an infringement of, Plaintiff's Properties, or dilution of Plaintiff's name(s), reputation, or goodwill;

5.    Aiding, abetting, or otherwise contributing to the manufacturing, advertising, marketing, promoting, offering for sale, and/or selling of goods or services that make unauthorized use of Plaintiff's Properties; and

6.    Effectuating assignments or transfers, forming new entities or associations,

or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs 1-5 of Section A.

B. Direct that Defendants immediately cease advertising, marketing, promoting, offering for sale, and/or selling goods or services, including the Infringing Services and Infringing Goods, that in any way involve Plaintiff's Properties, and permanently remove any uses of the same on the following web-based platforms:

 1. Websites owned or otherwise operated by Defendants, including but not limited to the JMC Sites;

 2. Social media pages, groups, or accounts registered to, operated by, or otherwise associated with Defendants, including but not limited to the JMC Social Media; and

 3. Storefronts, marketplace shops, and/or seller and vendor accounts found on third party sales and/or marketing websites.

C. Direct that Defendants deliver to the undersigned counsel for destruction, any and all:

 1. Defendants' Moe's Pop-Up façade, set, set dressing, decorations, signs, and all related materials utilized in Defendants' Moe's Pop-Up production;

 2. Counterfeit or infringing merchandise in their possession or control, bearing any of Plaintiff's Properties, or a simulation, reproduction, counterfeit, copy, or colorable imitation thereof;

 3. Devices, software, or instructional materials used in the manufacture or production of the Infringing Goods and Infringing Services; and

4.      Advertising or marketing materials used in conjunction with the sale or offer for sale of the Infringing Services and Infringing Goods.

D.      Direct that Defendants immediately cease use and ownership of moespopup.com, moesboardwalk.com, moestavernpopup.com, and seymoursbaypopup.com (collectively, the "Infringing Domains") in accordance with the terms as follows:

1.      Disable, or maintain any already disabled public access to the Infringing Domains;

2.      Initiate transfer of the domain name registrations for the Infringing Domains with the current registrar, identifying Plaintiff as the transfer recipient/domain registrant;

3.      Execute all documentation required by GoDaddy.com, associate registrar(s), and/or privacy service provider(s) necessary to effectuate such transfer; and

4.      Should the current registrar delegate complete control of the disposition and use of the Infringing Domains to this Court, said registration(s) are ordered to be transferred to Plaintiff, and Plaintiff is ordered to notify the relevant registrar(s) of this Court's Order governing the Infringing Domains registrations.

E.      Direct that Defendants report to this Court within thirty (30) days after a Permanent Injunction is entered to show compliance with Paragraphs A-D above.

F.      Direct such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that Plaintiff has authorized or is

related in any way to Defendants' businesses or unauthorized services, including but not limited to the Infringing Services and Infringing Goods.

G.      Award to Plaintiff, Defendants' profits, after an accounting, or at Plaintiff's sole election, statutory damages, including willful statutory damages, pursuant to 17 U.S.C. § 504(c).

H.      Award to Plaintiff three times Defendants' profits, after an accounting, or at Plaintiff's election statutory damages, including willful statutory damages, pursuant to 15 U.S.C. § 1117(a-c).

I.      Award to Plaintiff three times Defendants' profits, after an accounting, pursuant to 15 U.S.C. §§ 1125(a), 1117(a).

J.      Award to Plaintiff statutory damages as provided for by 15 U.S.C. § 1117(d).

K.      Award to Plaintiff its costs and reasonable attorneys' fees and investigative fees pursuant to 15 U.S.C. §§ 1117(a-b) and 17 U.S.C. § 505.

L.      Direct that the Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further Order(s), interpretation, or execution of any Order entered in this action, the modification of any such Order, the enforcement or compliance therewith, and the punishment of any violations thereof.

M.      Award other such relief to Plaintiff as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated this 11th day of July 2024.

       s/Hara K. Jacobs
       Hara K. Jacobs
       Noah Robbins
       ID Nos.:  74832, 206803
       Ballard Spahr LLP
       1735 Market Street, 51st Floor
       Philadelphia, PA 19103
       Telephone: (215) 864-8209
       jacobsh@ballardspahr.com
       robbinsn@ballardspahr.com

       Michael W. O. Holihan
       Florida Bar No.: 0782165
       Kimberly A. Harchuck
       Florida Bar No.: 0064852
       Holihan & Harchuck
       1101 N. Lake Destiny Rd., Ste. 400
       Maitland, Florida 32751
       Telephone: (407) 660-8575
       michael.holihan@holihanlaw.com
       kimberly.harchuck@holihanlaw.com
       Attorneys for Plaintiff