UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

TWENTIETH CENTURY FOX
FILM CORPORATION

*Plaintiff,*

v.

JMC POP UPS LLC,
JOSEPH MCCULLOUGH,
AND SAMANTHA SHUTTER

*Defendants.*

CIVIL ACTION NO. 24-CV-03021-PD

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR DEFAULT JUDGMENT

Plaintiff Twentieth Century Fox Film Corporation ("Plaintiff"), respectfully submits this Memorandum of Law in support of its Motion requesting this Court to: (a) enter Judgment by Default against Defendants JMC Pop Ups LLC ("Defendant JMC"), Joseph McCullough ("Defendant McCullough"), and Samantha Shutter ("Defendant Shutter") (collectively, "Defendants"); (b) permanently enjoin Defendants from further infringing upon the copyrighted works and trademarks associated with Plaintiff's *The Simpsons* and *Bob's Burgers* animated television programs; (c) award statutory damages against Defendants and in favor of Plaintiff; and (d) award Plaintiff its reasonable attorneys' fees and costs.

## I.    INTRODUCTION

This is an action for copyright infringement, trademark infringement,

trademark counterfeiting, unfair competition, and cybersquatting. Plaintiff's claims arise out of Defendants' business operation which provides bar and restaurant services in the form of a temporary or pop-up themed Moe's Tavern ("Moe's Pop-Up"), copied directly from the fictional Moe's Tavern set and associated characters in Plaintiff's animated television series *The Simpsons*. Compl. ¶ 2. Defendants market, sell, offer for sale, and advertise their Moe's Pop-Up services and unauthorized *The Simpsons* merchandise directly on-site at the Moe's Pop-Up events, as well as through Defendants' commercial websites, social media, and third-party sales platforms. *Id*. ¶ 20. Plaintiff has brought the same claims against Defendants arising out of Defendants' online marketing and advertising a pop-up themed restaurant copying the characters, sets, and storylines of Plaintiff's *Bob's Burgers* animated television series. *Id*. ¶ 36.

## II.    PROCEDURAL HISTORY AND ADMITTED FACTS

### A.    Procedural History

Plaintiff filed this action on July 11, 2024. (Doc. No. 1.) Defendant McCullough and Defendant JMC were served on July 20, 2024, and Defendant Shutter on July 31, 2024. (Doc. Nos. 6-8.) *See* Declaration of Hara K. Jacobs ("Jacobs Decl."), attached as Exhibit A. Defendants have failed to file any responsive pleading or give notice to Plaintiff's counsel, that they intend to defend this matter. (Doc. No. 10.) *See* Jacobs Decl. ¶ 6; Declaration of Kimberly A.

Harchuck ("Harchuck Decl."), attached as Exhibit B, at ¶ 14. Upon filing of Plaintiff's uncontested Motion for Entry of Default, the Clerk entered a default against each Defendant on August 26, 2024. (Doc. Nos. 9,10.)

### B.    Admitted Facts

#### i.    PLAINTIFF'S TRADEMARKS AND COPYRIGHTS TO *THE SIMPSONS* AND *BOB'S BURGERS*

Plaintiff and its affiliates engage in the production and broadcast of *The Simpson*s animated television program and *The Simpsons Movie*. Compl. ¶ 8. Plaintiff also engages in merchandising and licensing the characters and elements associated with *The Simpsons* and *The Simpsons Movie. Id*. Such licensing activities span a variety of goods and services, including apparel, bags, accessories, and novelty items, as well as licensed and authorized Moe's Tavern restaurant and bar locations at Universal Studios theme parks in Florida and California. *Id. See also* Declaration of Anne L. Coyle ("Coyle Decl."), attached hereto as Exhibit C, at ¶ 7. Similarly, Plaintiff and its affiliated entities also engage in the production and broadcast of the *Bob's Burgers* animated television series. Compl. ¶ 36.

Plaintiff's *The Simpsons* debuted on December 17, 1989, and is regarded as the longest running animated television show, American sitcom, and American scripted primetime television series, having been broadcast for thirty-five (35) seasons. *Id*. ¶ 9. *The Simpson*s' well-known characters include the Simpson family (Bart, Homer, Marge, Lisa, and Maggie), its legion of secondary characters

including, but not limited to, Principal Skinner, Chief Wiggum, Krusty the Clown, Ned Flanders, Montgomery Burns, Milhouse Van Houten, Apu Nahasapeemapetilon, Sideshow Bob, and Spider-pig, as well as its fictional locations and sets (e.g. Moe's Tavern, the fictional town of Springfield, Springfield Nuclear Power Plant, Springfield Elementary School, Kwik-E-Mart, Lard Lad Donuts, and Krusty Burger). *Id*; Coyle Decl. ¶ 4. *The Simpsons Movie* – which incorporates these same characters, sets, set locations, and storylines – was released in 2007 for world-wide distribution having box office earnings of over $536 million. *Id*.

Moe's Tavern, operated by the fictional character Moe Szyslak, is well-known and exclusively associated with *The Simpsons* and its related licensed products and services. *Id.* Moe's Tavern and Moe Szyslak have appeared in no less than 186 episodes, spanning from its 1989 premiere through the present. *Id.* ¶ 10.

Plaintiff owns and/or exclusively controls numerous properties related to *The Simpsons*, *The Simpsons Movie,* and *Bob's Burgers*. Such properties include, but are not limited to, the creative elements, characters, plots, sets, and set dressings for which Plaintiff has obtained Certificates of Copyright Registration with the U.S. Copyright Office (collectively, "Plaintiff's Copyrights"). Compl. ¶ 13, Ex. 1 (a representative, non-exhaustive list of Plaintiff's copyrighted works).

Plaintiff owns all rights, title, and interest in and to certain trademarks related to *The Simpsons* and *Bob's Burgers* that are duly registered with the U.S. Patent and

Trademark Office and/or established through Plaintiff's use in commerce in the United States (collectively, "Plaintiff's Trademarks"). Compl. ¶ 14, Ex. 2 (representative, non-exhaustive list of Plaintiff's trademarked properties).

The merchandising and licensing operations of Plaintiff and its affiliates include the use in commerce of Plaintiff's Trademarks. Compl. ¶ 15. As a result of widespread advertising and sales by Plaintiff, its affiliates, and/or respective licensees, as well as longstanding consumer recognition and acceptance of *The Simpsons* and *Bob's Burgers* television programs, Plaintiff's Trademarks are powerful source identifiers of, and for, Plaintiff's authorized products and services. *Id*. Plaintiff's Trademarks are each inherently distinctive and/or have acquired secondary meaning in the minds of consumers. *Id*. Plaintiff's Copyrights and Plaintiff's Trademarks will collectively be referred to as "Plaintiff's Properties."

## ii.    DEFENDANTS' INFRINGING CONDUCT

Defendants operate a business known as Moe's Pop-Up, which provides restaurant and bar services and has been directly copied from Plaintiff's *The Simpsons*. Compl. ¶ 20. Specifically, Defendants reproduced the Moe's Tavern exterior and interior set dressing, art, and set designs tied to *The Simpsons* episodes with Moe's Tavern as a plot point, *The Simpsons* characters, as well as other trademarks, original copy, and art related to *The Simpsons* and Moe's Tavern character (the "Infringing Services"). *Id*. Below is a side-by-side comparison of

Plaintiff's Moe's Tavern exterior and Defendants' Moe's Pop-Up exterior.

| ***The Simpsons* Moe's Tavern** | **Defendants' Moe's Tavern Pop-Up** |
|---|---|
| [Source: *The Simpsons* Core Guide 2018 – Style Guide] | [Source: *The Simpsons and Kelsey Grammer All in 1 Utica Location: Moe's Tavern Pop Up Starts This Week*, WKTV.com (Oct. 26, 2023)] |

*Id.* ¶ 25.

Defendants market the Infringing Services through their commercial websites: moespopup.com; moesboardwalk.com; moestavernpopup.com; thedankpopup.com; and seymoursbaypopup.com (collectively, "JMC Sites"), as well as social media accounts on Facebook, X, and Instagram (collectively, "JMC Social Media"). *Id.* ¶ 20. See the moespopup.com homepage below.



[Source: moespopup.com]

*Id.*

The interior of Defendants' Moe's Pop-Up also includes various set dressing and decorations which reproduce exact copies of Plaintiff's Trademarks and other protectible elements of *The Simpson*s franchise. *Id.* ¶ 27. These include counterfeit copies of the KRUSTY BURGER word mark in conjunction with both, hamburgers and restaurant services, as well as the DUFF mark in conjunction with the sale of beer, with such infringing uses depicted below.



   

[Source: Moe's Pop-Up Instagram Page]

*Id.* ¶¶ 26-27, Exs. 8-9.

Furthering the already blatant misrepresentation of an authorized connection between Moe's Pop-Up and *The Simpsons*, Defendants and their workers are

costumed as *The Simpsons* characters (e.g. Marge Simpson, Moe Szyslak, Duffman, and Sideshow Bob). *Id.* ¶ 28, Ex.10.

Defendants also market, sell, and offer for sale unlicensed and infringing merchandise which reproduces Plaintiff's Properties on, or in conjunction with, apparel, bags, hats, pins, keychains, insulated beer can coolers, and related memorabilia (the "Infringing Goods"). Compl. ¶ 21. The Infringing Goods are sold on-site at Moe's Pop-Up locations, as well as via the JMC Sites and Defendants' Etsy.com storefront. *Id*. The Infringing Goods are also sold in conjunction with various ticket packages to Moe's Pop-Ups, .with whimsical names tied to *The Simpsons* characters such as "*The Full Homer*." *Id*. ¶¶ 29-30. Purchase of *The Full Homer* package grants the customer admission to a Moe's Pop-Up event and a 'swag bag' consisting of Infringing Goods. *Id.*

To further demonstrate Defendants willful intent to trade on Plaintiff's Moe's Tavern, Defendant Shutter participated in an interview conducted by the Utica Observer-Dispatch on October 19, 2023, promoting a then-upcoming Moe's Pop-Up event in Utica, New York, and provided the following statement:

> *What makes us special is the fact we pop up for a short period of time, and you have to get your tickets to come see it,* because we break it down and move to the next town" Shutter said. "*It's just not something that would work as a permanent location. I mean, if you want a permanent Moe's, Universal [Studios Florida] does that very well, but we bring Springfield to everyone else who can't get there.*

*Id*. ¶ 34 (emphasis added).

Plaintiff placed Defendants on actual notice of its exclusive rights to *The Simpsons* on February 1, 2024, demanding that Defendants cease all further unauthorized use of Plaintiff's Properties sale of the Infringing Services and Infringing Goods. *Id.* ¶ 35. *See also* Coyle Decl. ¶ 10. Rather than comply with Plaintiff's lawful demands, Defendants instead held eighteen (18) additional Moe's Pop-Ups, advertised eleven (11) new locations for Moe's Pop-Up events, expanded their inventory of infringing set decor, and added new Infringing Goods sold and offered for sale on-site at the Moe's Pop-Ups or via the JMC Sites and JMC Social Media. Compl. ¶ 35. Additionally, on or about May 24, 2024, Defendants began marketing and advertising a new pop-up concept which copied and traded upon the characters, locations, and set dressings of Plaintiff's copyrighted and trademarked *Bob's Burgers* animated television series ("Bob's Burgers Pop-Up"). *Id.* ¶ 36. As with Defendants' Moe's Pop-Up, the advertising content promoting the Bob's Burgers Pop-Up incorporated exact copies of the trademarks, characters, and other copyrighted elements of Plaintiff's *Bob's Burgers* television show. *Id.*

In addition to Plaintiff's original notice to Defendants in February 2024, Plaintiff's counsel contacted or attempted to contact Defendant McCullough (or his authorized representative) numerous times throughout May and June of 2024, trying to resolve this matter prior to litigation. *See* Harchuck Decl. ¶¶ 3-13. Notwithstanding multiple representations of willingness to comply with Plaintiff's

demands and desire to resolve the matter, Defendants ultimately did not engage in any meaningful settlement communications, thus forcing Plaintiff to file this action. *Id.* ¶ 12 Defendants' misdirection went so far as Defendant McCullough agreeing to accept service of the Complaint only to provide an address for an abandoned business. *Id.* ¶ 13. Consequently, Plaintiff was forced to expend additional time and resources to effectuate actual service on all Defendants. *Id.* Since service of the Complaint, Plaintiff's counsel has received no contact from Defendants concerning settlement or their intent to defend this matter. *See* Harchuck Decl. ¶ 14.

## III. <u>ARGUMENT</u>

### A. <u>Plaintiff is Entitled to a Default Judgment in This Matter</u>

A default has been entered against Defendants based on their failure to appear and defend this matter. (Doc. No. 10.) When entering a default judgement, the Court will accept as true "the factual allegations of the complaint, except those relating to the amount of damages." *Woodhouse v. Gray*, No. 20-5086, 2021 WL 5992280, at *1 (E.D. Pa. May 28, 2001) (citing *Comdyn I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) and *Fridline v. Millennia Tax Relief, LLC*, No. 4:23-CV-00656, 2024 WL 1356716, at *2 (M.D. Pa. Mar. 29, 2024)).

In exercising its discretion concerning entry of a default judgment, the Third Circuit has generally instructed courts to "consider: (1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and

(3) whether defendant's delay is due to culpable conduct." *Broad. Music, Inc. v. George Moore Enter., Inc.*, 184 F. Supp. 3d 166, 169 (W.D. Pa. 2016) (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)). However, when a defendant fails to appear, "the district court […] is authorized to enter a default judgment based solely on the fact that the default has occurred." *S.A. Communale Co. Inc. v. Reddy-Buffaloes Fire Pump, Inc.*, No. 19-2291, 2020 WL 13826869, at *1 (E.D. Pa., June 16, 2020) (citing *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)); *Woodhouse,* 2021 WL 5992280, at *2 (where the defendant fails to appear in the matter "Default Judgment is thus appropriate, and no further analysis of the three default factors is required."). Given Defendants' failure to answer or otherwise defend this matter, Plaintiff's believe this Court need not consider the factors identified by the Third Circuit in *Chamberlain*.[1]

## B.    Plaintiff Has Stated Valid Causes of Action Under the Copyright Act and Lanham Act

### i.    PLAINTIFF HAS ESTABLISHED CLAIMS FOR COPYRIGHT INFRINGEMENT

To prevail on its copyright infringement claim, Plaintiff must prove "(1)

---

[1] Should this Court consider the *Chamberlain* factors, it remains appropriate to enter a default judgment. First, Defendants' failure to answer or otherwise defend this matter has prejudiced Plaintiff as Plaintiff has been forced to proceed with a default judgment as the only means of establishing liability. Second, Defendants' failure to defend this matter "signifies the absence of any litigable defense." Thirdly, Defendants failure to defend this matter "indicates culpable conduct." *Ackourey v. Raja Fashions Bespoke Tailors*, No. 13-2315, 2014 WL 4473656, at *2 (E.D. Pa. Sept. 11, 2014).

ownership to a valid copyright, and (2) copying of the constituent elements of the work that are original." *In re: McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 67-68 (3d Cir. 2018) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct 1282, 113 L.Ed.2d 358 (1991)).

Plaintiff has alleged, and submitted evidence of, ownership to the copyrights to *The Simpsons* animated television show and *The Simpsons Movie*, including all well-known fictional characters (e.g. Homer Simpson, Marge Simpson, Bart Simpson, and Moe Szyslak) as well as the fictional Moe's Tavern set which has appeared as a character in *The Simpsons* for over thirty-five (35) years. Plaintiff similarly claims copyrights to the *Bob's Burgers* animated series along with its characters and elements. Each of these original copyrighted works are identified directly in the Complaint, which provides an index of Plaintiff's Copyrights consisting of: (a) an image of the protected character together with the corresponding character name; (b) title of the work; (c) copyright registration number; and (d) type of work.

For the Court's convenience Plaintiff has provided a side-by-side index comparing each of the copyrighted works for which Plaintiff has alleged infringement with a photo evidencing the corresponding: (a) Moe's Pop-Up; or (b) Bob's Burgers Pop-Up infringing use by Defendants. Harchuck Decl. ¶ 17, Ex. B-1. This index demonstrates that Defendants have directly copied no less than thirty-

three (33) characters and/or copyrighted works (collectively, the "Infringed Works"), which fully supports Plaintiff's copyright infringement claim.

### ii. PLAINTIFF HAS ESTABLISHED CLAIMS FOR TRADEMARK INFRINGEMENT, TRADEMARK COUNTERFEITING, AND UNFAIR COMPETITION

The Third Circuit measures claims for trademark infringement and unfair competition by identical standards. "To prove either form of Lanham Act violation, the record must demonstrate that (1) plaintiff has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 580 (E.D. Pa. 2002) (quoting *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000); *see also Kars 4 Kids Inc. v. American Can!*, 8 F.4th 209, 218 (3d Cir. 2021).

Plaintiff alleges and has evidenced ownership of Plaintiff's Trademarks, which include the federally registered trademarks identified in the Complaint, as well as Plaintiff's common law MOE'S TAVERN mark used in conjunction with restaurant and bar services. *See* Compl. ¶¶ 8-12; 14-15, Ex. 2 (true and correct copies of Plaintiff's Trademarks and correlating registration numbers). Again, for the Court's convenience Plaintiff has provided a side-by-side index comparing each of the trademarked properties for which Plaintiff has alleged infringement with a photo evidencing Defendants' unauthorized use via the Infringing Services and Infringing

Goods. Harchuck Decl. ¶ 18, Ex. B-2. With respect to the MOE'S TAVERN common law mark specifically, Plaintiff has continuously used the mark in conjunction with restaurant and bar services since 2013, with the licensed and authorized Moe's Tavern at Universal Studios in Orlando, Florida. *See* Coyle Decl. ¶ 7. Defendants' use of the MOE'S TAVERN mark only began with the Moe's Pop-Up events in 2022. "With respect to ownership of an unregistered mark, the first party to adopt a mark can assert ownership so long as it has continuously used the mark in commerce." *Kars 4 Kids,* 8 F.4th, at 219 (quoting *Com. Nat'l Ins. Servs., Inc. v. Com. Ins. Agency, Inc*. 214 F.3d 432, 438 (3d Cir. 2000).

The remaining element to be proven by Plaintiff is that Defendants' use of Plaintiff's Trademarks, including the MOE'S TAVERN mark, are likely to cause confusion among consumers. While the Third Circuit has established a multifactored analyses to determine whether an infringer's use of a trademark is likely to cause confusion, it has also held that "when goods are in direct competition, however, courts need consider only the similarity of the marks themselves." *Laughing Smith, LLC v. PPNC, Inc.*, No. 1:23-CV-01285, 2024 WL 4253346, at *2 (M.D. Pa. Sept. 20, 2024) (citing *A & H Sportswear*, 237 F.3d at 214). This Circuit has also held that "there is great likelihood of confusion when an infringer uses the exact trademark as the plaintiff." *JUUL Labs, Inc. v. Zoey Trading*, No. 21-19299, 2022 WL 970412, at *5 (D.N.J. Mar. 31, 2022) (quoting *Opticians Ass'n of Am. v. Indep Opticians of*

*Am.*, 920 F.2d 187 195 (3d Cir. 1990)).

Based on the well-plead allegations, as well as Defendants' own statements publicizing and comparing Moe's Pop-Up events to Plaintiff's Moe's Tavern, Plaintiff finds a detailed analysis of the *Lapp* factors unnecessary. *See generally Interpace Corp. v. Lapp, Inc.,* 721 F.2d 460 (3d Cir. 1983). Instead, this Court may accept the truth of Defendants' own representations to the public, that Defendants' Moe's Pop-Up is an intentional and direct copy of Plaintiff's Moe's Tavern and its related trademarks, which is likely to cause confusion. As such, judgment may also be issued on Plaintiff's trademark infringement and unfair competition claims.

To establish a claim for counterfeiting, "plaintiff must prove that: (1) the defendant infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing that it was counterfeit…" *Pa. State Univ. v. Parshall,* No. 4:19-CV-01299, 2022 WL 2712051, at *14 (M.D. Pa. Feb. 17, 2022) (citing *Louis Vuitton,* 211 F. Supp. 2d at 580-581). As shown above, Defendants have infringed upon Plaintiff's rights to the KRUSTY BURGER word mark by intentionally utilizing a counterfeit copy of the mark in conjunction with both, restaurant services and hamburgers. Harchuck Decl. ¶ 18, Ex. B-2(a). Likewise, Defendants have utilized an exact copy of Plaintiff's DUFF marks in conjunction with the sale of beer. *Id.* Consequently, Defendants' use of the referenced three trademarks constitutes counterfeit use, thus entitling Plaintiff to

statutory damages pursuant to 15 U.S.C. § 1117(c).

### iii. PLAINTIFF HAS ESTABLISHED CLAIMS FOR ANTI-CYBERSQUATTING

To prevail on a claim under the Federal Anti-Cybersquatting Act (15 U.S.C. § 1125(d)), the plaintiff must show "that (1) the plaintiff's mark is distinctive or famous; (2) the defendant's domain names are identical to or confusingly similar to plaintiff's marks; and (3) the defendant registered his domain name with the bad faith intent to profit from it." *Louis Vuitton,* 211 F. Supp. 2d at 482 (citing *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001)); *see also Pa. State Univ. v. Keystone Alts.* LLC, No. 1:19-cv-02039, 2024 WL 4244815, at *33 (M.D. Pa. Sept. 19, 2024).

Plaintiff has made sufficient allegations that the MOE'S TAVERN mark is famous as shown by the now admitted fact that Plaintiff has utilized the MOE'S TAVERN mark in a minimum of 186 episodes of *The Simpsons* television series, *The Simpsons Movie,* and through Plaintiff's licensing of Universal Studios to operate authorized Moe's Tavern locations at its theme parks. *See* Compl. ¶¶ 8-12; 14-15; 57-59. Likewise, Plaintiff has alleged that Defendants' moestavernpopup.com, moesboardwalk.com and moespopup.com (collectively, the "Infringing Domains") are confusingly similar to the MOE'S TAVERN mark. *Id.* ¶ 58. Finally, Plaintiff has alleged that Defendants registered the Infringing Domains "with a bad-faith intent to profit from Plaintiff's goodwill in the" MOE'S TAVERN mark. *Id.* ¶ 59. Defendants' bad faith is demonstrated by their exhaustive efforts to

copy every facet of Plaintiff's Moe's Tavern, all while marketing and advertising the associated Infringing Services and Infringing Goods through the Infringing Domains. Consequently, Plaintiff is entitled to judgment against Defendants on the subject anti-cybersquatting claim.

## C.  **Plaintiff's Relief**

### i.  PLAINTIFF IS ENTITLED TO AN AWARD OF STATUTORY DAMAGES PURSUANT TO 17 U.S.C. § 504(c)

Each of the Infringed Works are the subject of multiple copyright registrations generated as a result of the hundreds of *The Simpsons* television broadcasts over the last 35 years, as well as *The Simpsons Movie*. *See* Compl. ¶¶ 9-10; Coyle Decl. ¶ 4. Additionally, Plaintiff engages in extensive licensing and merchandising of *The Simpsons* copyrighted works. *See* Compl. ¶ 8; Coyle Decl. ¶ 7. To support this licensing program, Plaintiff creates various style guides which pull and aggregate individual copyrighted characters and sets (e.g. Moe's Tavern) from the various audio/visual elements of *The Simpsons* episodes into single compilation works. For purposes of the present Complaint, Plaintiff has submitted *The Simpsons: Core Guide 2018* and *Bob's Burgers – 2018 Core Style Guide*, which collect and aggregate the Infringed Works. *See* Compl., Ex. 1. Plaintiff has also submitted individual copyright registrations relating to *The Simpsons Movie* and twelve separate representative episodes of *The Simpsons*. *Id*. The television and movie registrations are submitted to the Court in support of Plaintiff's copyright claims

related to the Moe's Tavern exterior and interior set designs, as well as to substantiate that there are multiple copyright registrations applicable to each of the Infringed Works. *See* Compl., Ex. 1; Harchuck Decl. ¶ 16, Ex. B-1(a).

Plaintiff is seeking a separate award of statutory damages for each of the Infringed Works. While the Third Circuit has not directly dealt with this issue, other Circuits (First, Ninth, Eleventh, and D.C. Circuits) have held that component works of a compilation may be the basis for separate awards of statutory damages if the component work is a copyrightable work on its own and has its own economic value. *Yamashita v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. 16-3934, 2022 WL 1200811, at *8 (D.N.J Pa., Apr. 21, 2022) (citing *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1116-17 (1st Cir. 1993)); *see also Strike 3 Holdings, LLC v. Doe*, No. 20-5122, 2022 WL 952728, at *5 (E.D. Pa. Mar. 30, 2022) (in determining whether the components works of a compilation support separate awards of statutory damages the Court should "focus is on whether the plaintiff-the copyright holder-issued its works separately, or together as a unit, and whether each individually copyrighted work has its own copyright life.").

Here, the Court is presented with thirty-three (33) characters which have been broadcasted for over thirty-five (35) years, appearing in hundreds of individual television broadcasts and a blockbuster feature film, all of which are protected by separate federal copyright registrations. *See* Harchuck Decl. ¶ 16, Ex. B-1. The

longstanding duration of the series, high volume of television episodes, and release of a motion picture combined with Plaintiff's ongoing licensing of the Infringed Works, evidence that such Infringed Works each have significant economic value and therefore, can stand alone as individual copyrighted works.[2] Based on this, Plaintiff has shown that it is entitled to statutory damages for each of the thirty-three (33) Infringed Works.

The Copyright Act provides for statutory damages between $750 and $30,000 per work without a showing of willfulness, and up to $150,000 per work with a showing of willfulness. Despite the allegations and documentary evidence substantiating clearly willful conduct by Defendants, Plaintiff simply seeks the maximum statutory damages for non-willful infringement in the amount of $30,000 per work for each of the thirty-three (33) copyrighted works, or a total of $990,000. *See* 17 U.S.C. § 504(c) and *Ackourey*, 2012 WL 33065, at *3.

In awarding statutory damages, courts consider the following factors: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the intellectual property; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether

---

[2] The Second Circuit has adopted a different test which focuses on whether the copyright holder initially published and distributed the works as separate works. See *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 140 (2d Cir. 2010). Here Plaintiff has distributed the works through 35 years of copyrighted television episodes, through a feature movie, and through a long-standing licensing program. The decades of distribution and multitude of distribution methods clearly show that each component work stands on their own for purposes of statutory damages.

a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *JUUL Labs,* 2022 WL 970412, at *6 (citing *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 688 (D.N.J Aug. 13, 2015)).

With respect to the first and sixth elements of the damages analysis regarding profit and value of the infringements, because Defendants allowed a default to be entered, Plaintiff has no information or documentation indicating Defendants' profits. As to the second and third elements, Defendants knowingly failed to obtain any sort of license or pay any licensing fees, all while their unauthorized reproduction and use of Plaintiff's Properties enabled their business to trade upon the significant value of Plaintiff's Properties. Regarding the fifth element as to Defendants' intent, the point of Defendants' Moe's Pop-Up was to painstakingly copy every aspect of *The Simpsons* copyrighted properties for the sole purpose of Defendants' commercial gain. Moreover, Defendants' intent is further demonstrated by their persistent wrongdoing after repeated communications by Plaintiff warning them to stop. Finally, as to the fourth and seventh elements concerning deterrent effect, only a significant damage award will discourage Defendants and similarly situated third parties seeking to exploit Plaintiff's Properties. Consequently, a significant award of $30,000 per work results in a higher risk for potential infringers who might not otherwise be deterred by a 'de minimis' monetary award.

### ii.    PLAINTIFF IS ENTITLED TO AN AWARD OF STATUTORY DAMAGES PURSUANT TO 15 U.S.C. § 1117(c)

The statutory damages provision of the Lanham Act allows for the discretionary awarding of damages between $1,000 and $200,000 per mark, per type of good, and with a showing of willfulness, up to $2 million per mark. 15 U.S.C. § 1117(c). Because the statute does not provide clear guidelines for awarding such damages, "courts have tended to use their wide discretion to compensate the plaintiffs, as well as to deter and punish the defendants." *Chanel*, 133 F. Supp. 3d at 687. Further, this Court need not conduct a hearing on damages when "statutory damages are involved because the very purpose of statutory damages is to provide plaintiff with relief when damages are not assessable due to defendant's conduct." *Prime Hookah Inc. v. FCM Online LLC*, No. 2:21-cv-13915, 2022 WL 1115361, at *5 (D.N.J. Apr. 14, 2022) (quoting *Platypus Wear, Inc. v. Bad Boy Club, Inc.,* No. 08-02662, 2009 WL 2147843, at *6 (D.N.J. July 15, 2009).

Plaintiff seeks an award of $100,000 per mark or a total of $300,000, as such an award is appropriate under the present circumstances: (a) Defendants' counterfeiting activities can only be seen as a willful and intentional effort to trade upon Plaintiff's goodwill; (b) an award of $100,000 per mark is only half of the maximum damages available for *non-willful* counterfeiting; (c) despite receiving actual notice of Plaintiff's claims, Defendants continued exploiting Plaintiff's Properties, specifically hosting eighteen (18) additional Moe's Pop-Up events and

advertising another eleven (11) new Moe's Pop-Up locations; (d) again, despite actual notice, Defendants expanded their unauthorized use of Plaintiff's Properties to include Bob's Burgers Pop-Ups; (e) this Court may reasonably assume that Defendants were reaping sufficient profits from their unauthorized operations, thus rendering Defendants willing to assume the risks of Plaintiff bringing the present action; (f) as Defendants have failed to defend this matter, they have prevented Plaintiff from conducting discovery on Defendants' online sales and Moe's Pop-Up event sales; and (g) Plaintiff contends that an award of statutory damages must be significant – but not punitive – so as to deter Defendants from continuing their infringing conduct, while also discouraging similarly situated third parties from their own blatant theft of Plaintiff's Trademarks. Taken together, Plaintiff contends an award of $100,000 for each of the three counterfeit marks, or at total of $300,000, is more than reasonable.

### iii.    PLAINTIFF IS ENTITLED TO AN AWARD OF STATUTORY DAMAGES PURSUANT TO 15 U.S.C. § 1117(d)

Plaintiff is entitled to judgement on its cyberpiracy claim against Defendants based on Defendants' bad faith registration of three domain names which trade upon the MOE'S TAVERN mark. Pursuant to the Lanham Act (15 U.S.C. § 1117(d)), this Court has discretion to award statutory damages between $1,000 and $100,000 per domain name. *Louis Vuitton,* 211 F. Supp. 2d, at 585. Plaintiff seeks an award of statutory damages of $5,000 per domain or a total award on these claims of $15,000.

Such an award is fully within this Court's discretion and is appropriate based on Defendants' intentional trading upon the famous MOE'S TAVERN mark. *See Panda Herbal Int'l., Inc. v. Luby*, No. 05-2943, 2007 WL 44023, at *2 (E.D. Pa. Jan. 9, 2007) (an award of $5,000 per domain name is appropriate where the domain is a mainstay of Defendants' business). Plaintiff also seeks an order cancelling the domain names as provided for by 15 U.S.C. § 1125(d)(1)(C).

### iv.    PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF

Plaintiff seeks a permanent injunction prohibiting Defendants from further sales and marketing of the Infringing Services and Infringing Goods. Based on the default entered against Defendants, Plaintiff is entitled to a permanent injunction on its copyright and trademark infringement claims upon a showing that: "(1) it will suffer irreparable injury, (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest." *Laughing Smith,* 2024 WL 4253346, at *4 (quoting *TD Bank N.A v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019)).

With respect to the first factor concerning irreparable injury, the Lanham Act (15 U.S.C. § 1116(a)) provides that Plaintiff is entitled to a rebuttable presumption of irreparable injury based on prevailing trademark infringement, unfair competition, and cyber-squatting claims. *Nichino Am., Inc. v. Valent USA LLC*, 44 F.4th 180, 185 (3d Cir. 2022). As for Plaintiff's copyright claims, only a permanent

injunction will stop Defendants' continued operation of its unauthorized Moe's Pop-Ups which are based solely on *The Simpsons'* copyrighted works. Further, given the inherent health and safety risks connected to the operation of any bar or restaurant – particularly pop-up or otherwise temporary – establishments serving food and alcohol, Defendants' continued operation of Moe's Pop-Ups present a real and ongoing threat to the goodwill associated with Plaintiff's Properties. The second element in the Court's analysis directly converges with the above facts regarding the nature of the Moe's Pop-Up events. No amount of money would cure the damage to Plaintiff's reputation should an incident occur at Defendants' unsanctioned Moe's Pop-Up involving the consumption of adulterated food, sale of alcohol to minors, the continued sale of alcohol to overserved patrons, or any number of untoward activities. The Third Circuit has held that "loss of control of reputation, loss of trade, and loss of goodwill" are all bases that can give rise to irreparable harm." *Laughing Smith,* 2024 WL 4253346, at *4 (citing *Opticians Ass'n.*, 920 F.2d, at 195). The third factor, the balance of hardships, weighs heavily in Plaintiff's favor as Defendants' only burden is the cessation of their unauthorized business operations. This is particularly true under the present facts where Plaintiff has made repeated demands that Defendants cease in their infringing conduct. Finally, the public interest is served by eliminating consumer confusion and the disappointment customers may experience when presented with Defendants' cheap knock-off copies of Plaintiff's

Properties. Taking the above into account, Plaintiff is entitled to permanent injunctive relief.

### V.    PLAINTIFF IS ENTITLED TO AN AWARD OF COSTS AND REASONABLE ATTORNEYS' FEES

Plaintiff also seeks an award of its reasonable attorneys' fees and costs related to this matter as a prevailing party under the Copyright Act. 17 U.S.C. § 505. Further, given Defendants' intentional counterfeiting of Plaintiff's Trademarks, Plaintiff is entitled to an award of its attorneys' fees under 15 U.S.C. § 1117(b). *Microsoft Corp. v. CMOS Technologies*, 872 F. Supp. 1329 (D.N.J. 1994) ("§ 1117(b) provides that the court shall award attorneys' fees in cases where the defendant is found to have intentionally sold counterfeit goods in violation of § 1114.").

### IV.    <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests this Court to grant the requested relief in all respects.

*/s/ Hara K. Jacobs*        
Hara K. Jacobs
Noah Robbins
ID Nos.: 74832
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 864-8209
jacobsh@ballardspahr.com

robbinsn@ballardspahr.com

Michael W. O. Holihan
Florida Bar No.: 0782165
Kimberly A. Harchuck
Florida Bar No.: 0064852
Holihan & Harchuck
1101 N. Lake Destiny Rd., Ste. 400
Maitland, Florida 32751
Telephone: (407) 660-8575
michael.holihan@holihanlaw.com
kimberly.harchuck@holihanlaw.com
Attorneys for Plaintiff