UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TWENTIETH CENTURY FOX FILM CORPORATION<br><br>*Plaintiff,*<br><br>v.<br><br>JMC POP UPS LLC, JOSEPH MCCULLOUGH, AND SAMANTHA SHUTTER,<br><br>*Defendants.* | CIVIL ACTION NO. 24-CV-03021-PD |

**DECLARATION OF KIMBERLY A. HARCHUCK IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

I, Kimberly A. Harchuck, declare as follows:

1. I am an attorney at law and partner at the law firm of Holihan & Harchuck, counsel for Twentieth Century Fox Film Corporation ("Plaintiff"). I have personal knowledge of the facts stated in this Declaration and if called upon by a court of law to do so, I could and would competently testify thereto.

2. I submit this Declaration in support of Plaintiff's Motion & Memorandum (the "Memorandum") seeking to: (a) enter Judgment by Default against Defendants JMC Pop Ups LLC ("Defendant JPL"), Joseph McCullough ("Defendant McCullough"), and Samantha Shutter ("Defendant Shutter")

(collectively, "Defendants"); (b) permanently enjoin Defendants from further infringing upon the copyrighted works and trademarks associated with Plaintiff's *The Simpsons* and *Bob's Burgers* television programs; (c) award statutory damages against Defendants and in favor of Plaintiff; and (d) award Plaintiff its reasonable attorneys' fees and costs.

3. In February of 2024, my firm was assigned the present matter. Plaintiff requested that we:

    a. Begin preparing a Complaint concerning Plaintiff's claims against Defendants;

    b. Determine potential terms of settlement; and

    c. Contact Atty. John Simmons who had previously communicated with Plaintiff on Defendants' behalf regarding this matter, in an attempt to further pre-litigation settlement.

4. In Plaintiff's ongoing efforts to resolve this matter without litigation, on May 29, 2024, I attempted communication with Atty. Simmons via telephone/voicemail and email, requesting clarification as to whether he represented Defendants in this matter. I spoke directly to Atty. Simmons later that day regarding the following:

    a. I confirmed his recollection of the matter and previous settlement communications with Plaintiff;

2

    b.    I reiterated Plaintiff's preference to settle this matter prior to litigation; and

    c.    Atty. Simmons was unable to confirm whether he still represented Defendants in this matter but agreed to contact Defendants immediately.

5.    On May 30, 2024, I spoke directly to Atty. Simmons regarding the following:

    a.    Atty. Simmons was no longer formally representing Defendants in this matter [which Atty. Simmons confirmed in writing on June 3, 2024], but that Defendants requested he make another attempt at resolution on their behalf;

    b.    Defendants understood the allegations against them;

    c.    Defendants wished to inquire regarding the possibility of establishing a business relationship with Plaintiff, specifically some form of licensing to enable the continuation of the Moe's Pop-Ups (as defined in the Memorandum);

    d.    I informed Atty. Simmons that Plaintiff was unable to negotiate a licensing relationship with Defendants;

    e.    Atty. Simmons confirmed that Defendants were willing to cease all operations and sign a written undertaking reflecting the same; and

  f. Atty. Simmons advised that he would convey our conversation to Defendants, but also recommended that I contact Defendants directly.

6. On May 31, 2024, in another attempt to resolve this matter, I made several unanswered calls to all three of the telephone numbers associated with Defendants [personal and business], including the phone number that Defendants used to previously contact Plaintiff. I left voicemails at each number conveying the following:

  a. Identifying myself, the legal matter, and my contact information;

  b. My direct communication being a result of my correspondence with Atty. Simmons;

  c. Expressed Plaintiff's desire to resolve matter conditioned on immediate action by Defendants; and

  d. Noted time being of the essence and my firm's availability until 5:00 P.M., Monday through Friday.

7. On June 3, 2024, I again attempted communication with Defendants via telephone but was unable to make contact; all calls resulted in voicemails conveying the same information noted in Paragraph 6 above. At approximately 8:08 P.M. that evening, Defendant McCullough left me a voicemail stating that he was returning my calls.

8. On June 4, 2024, I attempted communication via Defendant McCullough's telephone number but was unable to make contact; my call resulted in a voicemail conveying the same information noted in Paragraph 6 above. At approximately 9:29 P.M. that evening, Defendant McCullough left me a voicemail stating that he was returning my call.

9. On June 5, 2024, I spoke directly to Defendant McCullough regarding the following:

    a. Confirmation that Defendants were not represented by legal counsel;

    b. Defendant McCullough requested that Plaintiff entertain a license agreement with Defendants – I again confirmed that was not a viable option at this time;

    c. I explained Plaintiff's requirements for settlement and informed Defendant McCullough that Plaintiff would be filing suit if the matter was not resolved;

    d. Defendant McCullough agreed to immediately cease all operations, specifically stopping all ticket sales for upcoming Moe's Pop-Up events, begin refunding previously purchased tickets, and updating Defendants' web presence to reflect that all such events were now cancelled; and

5

  e. Chief among Plaintiff's demands was that Defendants immediately cancel all Moe's Pop-Up events being marketed and advertised through the Defendants' websites and social media.

10. On June 7, 2024, I issued an email to Defendants again expressing Plaintiff's desire to settle this matter prior to litigation and requesting a status update regarding Defendants' completion of terms of settlement agreed on during our June 5, 2024, phone call, as the majority of obligations were still pending (e.g. Defendants still had not posted notices of cancellation for the upcoming Moe's Pop-Up events or removed any of the infringing content on their web presence). I also asked if Defendant McCullough would be willing to accept service of the Complaint, and if so, to provide an address for service.

11. On June 11, 2024, I received an email from Defendant McCullough informing me of the following:

  a. Defendants had yet to announce the cancellation of the scheduled Moe's Pop-Ups, but would attempt to do so over the next three weeks;

  b. Defendants had yet to issue refunds for previously purchased tickets to the upcoming Moe's Pop-Up events; and

  c. Defendant McCullough agreed to receive service of process at a local business with which he was associated and provided the address for said business location.

12. On July 11, 2024, the Complaint was filed initiating litigation in this matter.

13. I conveyed to Plaintiff's local counsel the information noted in Paragraph 11(c) above regarding Defendant McCullough's acceptance of service. When service was attempted at the address provided by Defendant McCullough, the business was noted as having been closed for some time. Consequently, proper service was subsequently made at each Defendant's residence or place of business.

14. Since service of the Complaint, I have not received any further contact from Defendants concerning settlement or their intent to defend this matter.

15. Despite Defendants receiving actual notice of their infringements from Plaintiff and myself, and agreeing to immediately cease Moe's Pop-Up events and sales, Defendants proceeded to offer such Infringing Services (as defined in the Memorandum) as follows:

    a. Holding at least ten (10) additional Moe's Pop-Up events in Loveland, Ohio (Feb. 14-25, 2024);

    b. Holding at least eight (8) additional Moe's Pop-Up events in Gallatin, Tennessee (April 5-14, 2024);

    c. Advertising at least eleven (11) new Moe's Pop-Up locations for future events;

    d.    Continuing to sell, market, distribute, and offer for sale the Infringing Goods (as defined in the Memorandum) online and at Moe's Pop-Up events; and

    e.    Expanding the scope of their commercial operations in May 2024 to include pop-up events copying or otherwise trading upon characters, locations, and set dressing related to the *Bob's Burgers* animated series.

16.    Compiled of materials from Complaint Exhibits 1 and 3-16 for the Court's convenience, attached as Exhibit B-1(a) to this Declaration is a side-by-side index comparing each of the copyrighted works for which Plaintiff has alleged infringement with a photo evidencing the corresponding Moe's Pop-Up infringing use by Defendants. Similarly, and also compiled of materials from Complaint Exhibits 1 and 3-16 for the Court's convenience, attached as Exhibit B-1(b) to this Declaration is a side-by-side index comparing each of the copyrighted works for which Plaintiff has alleged infringement with a photo evidencing the corresponding Bob's Burgers Pop-Up (as defined in the Memorandum) unauthorized reproduction by Defendants. As shown in the referenced comparison tables, Defendants have exactly duplicated Plaintiff's Copyrights (as defined in the Memorandum) as part of the commercial operations of Moe's Pop-Ups and marketing of Bob's Burgers events. Each of Plaintiff's Copyrights has been infringed by Defendants.

17. Compiled of materials from Complaint Exhibits 2-16 for the Court's convenience, attached as Exhibit B-2(a) to this Declaration is a side-by-side index comparing each of the trademarks for which Plaintiff has alleged infringement with a photo evidencing the corresponding Moe's Pop-Up infringing use by Defendants. Similarly, and also compiled of materials from Complaint Exhibits 2-16 for the Court's convenience, attached as Exhibit B-2(b) to this Declaration is a side-by-side index comparing each of the trademarks for which Plaintiff has alleged infringement with a photo evidencing the corresponding Bob's Burgers Pop-Up unauthorized reproduction by Defendants. As shown in the referenced comparison tables, Defendants have exactly duplicated Plaintiff's Trademarks (as defined in the Memorandum) as part of the commercial operation of Moe's Pop-Ups and marketing of Bob's Burgers events. Each of Plaintiff's Trademarks has been infringed by Defendants.

18. Further, three of the trademark infringements identified in Exhibit B-2(a) also constitute counterfeit infringements of Plaintiff's Trademarks. Specifically, Defendants' use of the KRUSTY BURGER mark in conjunction with restaurant services (Reg. No. 5,099,931) and hamburgers (Reg. No. 5,099,032), as well as use of the DUFF mark in conjunction with the sale of beer (Reg. Nos. 3,486,187 and 4,566,718).

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the foregoing is true and correct.

Executed in Maitland, Florida this 26th day of March 2025.

>  */s/ Kimberly A. Harchuck*
> Kimberly A. Harchuck