IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TWENTIETH CENTURY FOX FILM CORPORATION, : <br>               Plaintiff,       : <br>                           : <br> v.                              :     Civ. No. 24-3021 <br>                           : <br> JMC POP UPS, LLC, et al.,     : <br>               Defendants.   : | |

**O R D E R**

Plaintiff Twentieth Century Fox Film Corp. moves for default judgment against Defendants JMC Pop Ups, LLC, Joseph McCullough, and Samantha Shutter (Doc. No. 14.) I will grant the Motion and award damages of $1,265,000.

**I.   BACKGROUND**

As alleged, Fox and its affiliates produce and broadcast television programs *The Simpsons* and *Bob's Burgers*. (Doc. No. 1, ¶¶ 7–16.) Plaintiff owns and licenses numerous registered and unregistered copyrights and trademarks related to these programs. (Id. at ¶¶ 13–14.) This licensing includes authorized Moe's Tavern restaurant locations in Florida and California theme parks. (Id. at ¶ 8.)

Fox alleges that Defendants directly reproduced the Moe's Tavern of *The Simpsons* in their temporary restaurant business "Moe's Pop-Up." (Id. at ¶ 20.) At the temporary pop-up restaurants, workers dressed as *The Simpsons* characters serve customers amid décor replicating the fictional Moe's Tavern and hawk merchandise featuring trademarked and copyrighted elements from the show. (Id. at ¶¶ 20–34.) On February 1, 2024, Fox demanded Defendants cease their unauthorized activities, yet Defendants continued to hold and advertise Moe's Pop-Up events. (Id. at ¶ 35.) In May 2024, Defendants then expanded their business into a second pop-up restaurant concept based on Fox's program *Bob's Burgers*, again reproducing copies of copyrighted and trademarked

elements of the show.  (Id. at ¶ 36.)

On July 11, 2024, Fox brought claims for copyright infringement, trademark infringement and counterfeiting, unfair competition and false designation of origin, and cybersquatting.  (Id. at ¶ 38–60.)  It sought actual and statutory damages, injunctive relief, and counsel fees.  (Id.)  The matter was assigned to me.

On July 30, 2024, Fox filed returns of service on defendants JMC Pop Ups LLC and Joeseph McCullough, attesting that it had served process on both defendants on July 20, 2024.  (Doc. Nos. 6, 7.)  On August 6, 2024, the same was filed as to service on Shutter on July 31, 2024.  (Doc. Nos. 6–8.)  Defendants JMC Pop Ups and McCullough were thus required to file a responsive pleading by August 12, 2024; and Shutter by August 21, 2024.  Fed. R. Civ. P. 12(a)(1)(A)(i).  Yet, no Defendant ever entered an appearance.  (See Docket.)  On August 26, 2024, Fox requested default, averring that it had properly served all defendants.  (Doc. No. 9.)  The Clerk entered default the same day.  (Doc. No. 10.)  On March 26, 2025, Plaintiff moved for default judgment.  (Doc. No. 14.)

## II.     LEGAL STANDARDS

Rule 55 provides that I may enter default judgment after default has been entered by the Clerk of Court.  Fed. R. Civ. P. 55(b)(2).  Entry of default does not, however, entitle a plaintiff to default judgment as a matter of right.  D'Onofrio v. Il Mattino, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006).  "[T]he entry of a default judgment is left primarily to the discretion of the district court."  Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).  "[D]efault judgments are generally disfavored."  Budget Blinds, Inc. v. White, 536 F.3d 244, 258 (3d Cir. 2008).

Generally, the Cout weighs three factors: "(1) prejudice to plaintiff if default is denied, (2) whether defendant appears to have a litigable defense, and (3) whether defendant's delay is due to

culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000). "When a defendant fails to appear," however, "the district court or its clerk is authorized to enter a default judgement based solely on the fact that default has occurred." S.A. Communale Co. Inc. v. Reddy-Buffaloes Fire Pump, Inc., No. 19-2219, 2020 WL 13826869 at *1 (E.D. Pa. June 16, 2020) (quoting Anchorage Assocs. v. Virgin Islands Bd. Of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)).

The Court must first consider "whether the unchallenged facts constitute a legitimate cause of action." Joe Hand Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261, 270 (E.D. Pa. 2014); 10A Wright & Miller, Federal Practice and Procedure § 2688.1 (4th ed. 2025). "If the court determines that the plaintiff has stated a cause of action, it must then assess damages." Joe Hand, 3 F. Supp. 3d at 271.

"Where a court enters a default judgment, 'the factual allegations of the complaint . . . will be taken as true.'" DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (citation omitted). The Court need not accept Plaintiff's legal conclusions or factual allegations regarding damages. Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (citing Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)).

### III.  DISCUSSION

Fox has made out a case for copyright infringement, trademark infringement, and cybersquatting. Moreover, the Chamberlain factors weigh in favor of default judgment. Accordingly, I will award $1,295,000 and enjoin further infringing behavior.

Defendants have failed to appear or otherwise defend. (See Docket.) I may thus enter default judgment against them. Fox will be prejudiced if judgment is denied: "Plaintiff is unable to proceed with the action due to Defendant's failure to respond and has no other means of

recovering against Defendant[s]." United States v. Knier, No. 18-553, 2018 WL 3064227, at *3 (M.D. Pa. June 21, 2018). Defendants' failure to respond to Fox's allegations strongly suggests that they have no litigable defense. Id. Finally, Defendants' complete failure to defend themselves suggests that their conduct is culpable. Id. (citing Innovative Off. Prods., Inc. v. Amazon.com, Inc., No. 10-4487, 2012 WL 1466512, at *3 (E.D. Pa. Apr. 25, 2012)) ("A defendant's default, or its decision not to defend against allegations in a complaint may be grounds for concluding that the defendant's actions are willful."). In these circumstances, default judgment is appropriate.

### A. Copyright Infringement

Plaintiff has alleged thirty-three instances of copyright infringement. (See Doc. No. 14-7.) I will award statutory damages for thirty-two.

To recover for copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." In Re McGraw-Hill Global Education Holdings LLC, 909 F.3d 48, 67 (3d Cir. 2018) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

In its Copyright Comparison Charts, Fox compares thirty-three of its copyrighted works with Moe's Pop-Up décor, advertising, and merchandise. (Doc. No. 14-7.) The charts include direct copies of original characters and set designs from *The Simpsons* and *Bob's Burgers*. (Id.) Fox can thus establish copyright infringement.

The Copyright Act provides that a copyright owner may recover statutory damages for each work infringed. 17 U.S.C. § 504(c)(1). For the calculation of statutory damages, "all the parts of a compilation or derivative work constitute one work." Id. A plaintiff cannot recover multiple times over for individual elements of a "composite whole" unless those elements "have standalone value at the level of 'one work.'" Sullivan v. Flora, Inc., 936 F.3d 562, 571 (7th Cir.

4

2019).

Fox contends each entry in its Copyright Comparison Chart constitutes a separate work because each has "significant economic value" from the longstanding duration of the series, high volume of television episodes, and ongoing licensing activities. (Doc. No. 14-4 at 19.) Fox cannot, however, claim separate statutory damages for both the "Moe's Tavern Interior" and "Moe's Tavern Interior Elements" listed in the Chart. (See Doc. No. 14-7 at 9–10.) The interior elements—including a generic pool table, jar of pickled eggs, and a wall display of sports pennants—are not separate works with their own "standalone value" from the "composite whole" of the interior set. See Sullivan, 936 F.3d at 571. Fox has provided no evidence that these elements have been individually licensed or otherwise have individual value. Accordingly, I will calculate statutory damages for thirty-two of the thirty-three copyrighted works.

### B. Trademark Infringement and Unfair Competition

I review federal trademark infringement and unfair competition claims "by identical standards." A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 200 F.3d 198, 210 (3d Cir. 2000). Fox must demonstrate: (1) that the marks in question are valid and legally protectable; (2) that it owns the marks; and (3) that Defendant's use of the marks will likely cause confusion as to the source, affiliation, and/or sponsorship of the goods. Id. Registration with the USPTO is *prima facie* evidence of the first two elements. Chanel, Inc. v. Matos, 133 F.Supp.3d 678, 685 (D.N.J. 2015). "Where the trademark owner and the alleged infringer deal in competing goods or services, the court need rarely look beyond the mark itself" to find a likelihood of confusion. Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 462 (3d Cir. 1983).

Fox requests statutory damages for infringement of three marks: "KRUSTY BURGER" used in connection with hamburgers and restaurant services, and "DUFF" used in connection with

beer. (Doc. No. 14-1, at 7.)  The mark's registration numbers issued by the USPTO establish the first two elements.  See Chanel, 133 F.Supp.3d at 685.  Defendants used the same exact marks in connection with the same exact goods and services as Fox.  (See Doc. Nos. 14-8, 14-9.)  Accordingly, there is a "great likelihood of confusion" and Fox has made out a claim for trademark infringement.  Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 195 (3d Cir. 1990).

### C. Cybersquatting

Fox must establish: (1) it owns a distinctive or famous mark entitled to protection; (2) Defendants' domain names are "identical or confusingly similar to" the mark; and (3) Defendants registered the domain names "with the bad faith intent to profit from them."  Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001).  For the second element, I consider the facial similarity of the marks.  See N. Light Tech., Inc. v. N. Lights Club, 236 F.3d 57, 66 n.14 (1st Cir. 2001); see also Shields, 254 F.3d at 483 (finding slight misspellings of the mark confusingly similar).  "Slight differences between domain names and registered marks, such as the addition of minor or generic words . . . are irrelevant" when the additional words do not remedy the confusion.  Mayflower Transit, LLC v. Prince, 314 F.Supp.2d 362, 367 (D.N.J. 2004) (quoting Ford Motor Co. v. Greatdomains.com, Inc., 177 F.Supp.2d 635, 641 (E.D. Mich. 2001)) (finding "mayflowervanline.com" confusingly similar to the mark MAYFLOWER when that mark's owner was a moving van company).  The statute lists nine nonexhaustive factors to determine bad faith. 15 U.S.C. § 1125(d)(1)(B)(I).

Fox alleges that it owns a distinctive common law trademark in "MOE'S TAVERN" based on the tavern's appearances in 186 episodes of The Simpsons and the licensed Moe's Tavern restaurant and bar at Universal Studios in Florida and California.  (Doc. No. 1, ¶¶ 9–10.)  As in

Mayflower Transit, the insertion of the word "popup" in the registered domain name "moestavernpopup.com" does not remedy the confusion caused by the adoption of the entire mark when Fox has established the mark is used in similar restaurant activities. Fox has established bad faith through Defendants' blatant copying of the mark to advertise their unauthorized, infringing business. Defendants themselves had no rights to the mark; neither did they make fair, noncommercial use of the mark. See American Cruise Lines, Inc. v. HMS American Queen Steamboat Co., No. 13-324, 2017 WL 3528606 at *13 (D. Del. Aug. 16, 2017) (finding evidence of bad faith when "Defendant unquestionably knew that Plaintiff had the rights to the . . . marks and that it did not"). Instead, Defendants registered the domain to advertise their competing business, diverting customers from Fox's licensed Moe's Tavern restaurants. See CrossFit, Inc. v. 2XR Fit Systems. LLC, No. 13-1108, 2014 WL 972158 at *8 (D.N.J. Mar. 11, 2014) (finding bad faith after inferring that competitor registered a confusingly similar domain to divert customers away from the mark's owner).

The other two domain names Fox has identified, "moespopup.com" and "moesboardwalk.com," do not contain the distinctive mark, but only the name "Moe," which is not itself distinctive. (Doc. No. 14, at 16.) As they are not facially confusingly similar to the "MOE'S TAVERN" mark, they cannot support a claim of cybersquatting.

### D. Injunction

I may grant injunctions on such terms as I "deem reasonable to prevent or restrain infringement." 17 U.S.C. § 502(a). In deciding whether to grant a permanent injunction, I must consider whether: "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the

public interest." Shields, 254 F.3d at 482.  When applying these factors in granting default judgment, this Court has held that injunctive relief is appropriate against a repeat infringer "to ensure the misconduct does not recur." Strike 3 Holdings, LLC v. Doe, No. 20-5122, 2022 WL 952728 at *4 (E.D. Pa. March 30, 2022).  There is a rebuttable presumption of irreparable injury in cases of prevailing trademark infringement or cybersquatting.  15 U.S.C. § 1116(a).

As I have described, Fox has successfully established its claims.  An injunction requiring Defendants to refrain from infringing activity will prevent ongoing harm to Fox in the form of "loss of control of reputation, loss of trade, and loss of good will," and presents minimal harm to Defendant as it only enjoins activity that is already prohibited by statute. Opticians Ass'n of Am., 920 F.2d at 185.  Finally, issuing an injunction will further the public's interest in the avoidance of consumer confusion. See id. at 197 ("Public interest can be defined in a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused.").

### E.  Damages

Fox requests $1,305,000 in damages: $30,000 for each of thirty-three alleged copyright violations under 17 U.S.C. § 504(c); $100,000 for each of three instances of alleged trademark infringement under 15 U.S.C. § 1117(c); and $5,000 for each of three unauthorized domain names under 15 U.S.C. § 1117(c) and § 1125(d)(1).  (Doc. No. 14-1, at 6–8.)   Fox also requests costs and counsel fees under 17 U.S.C. § 505 and 15 U.S.C. § 1117(b).   I will award $1,265,000.

Under the Copyright Act, I may award not less than $750 and up to $30,000 for each copyrighted work infringed.  17 U.S.C. § 504(c)(1).  I may increase the award up to $150,000 for willful infringement. Id. § 504(c)(2).  Under the Lanham Act, I may award damages between $1,000 and $200,000 per infringed mark, and may increase the award up to $2 million per mark

for willfulness.  15 U.S.C. § 1117(c).  I may award statutory damages between $1,000 and $100,000 for each domain name under the cybersquatting provisions of the Lanham Act.  Id. § 1117(d).  In the absence of clear guidelines for setting a statutory damage award, I have "wide discretion to compensate plaintiffs, as well as to deter and punish defendants."  Louis Vuitton Malletier v. Veit, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002).

Considering Defendants' blatant and repeated acts, I will award $30,000 for each copyright infringement, $100,000 for each trademark infringement, and $5,000 for the infringing domain name, for a total of $1,265,000.  These amounts fall well within the parameters established by Congress, account for the Defendants' willfulness, and will both compensate Fox and deter other possible wrongdoers.

Fox has failed to supply any evidence of its costs or counsel fees to support an award under 17 U.S.C. § 505 and 15 U.S.C. § 1117(b).   Accordingly, I will deny its fee request without prejudice.

\*                                                        \*                                                        \*

**AND NOW**, this 3rd day of September, 2025, it is hereby **ORDERED** that:

1. Fox's Motion for Default Judgment is **GRANTED in part**.  (Doc. No. 7.)  Judgment is **ENTERED** against JMC Pop Ups, LLC, Joseph McCullough, and Samantha Shutter for statutory damages of **$1,265,000**.  This Judgment may be immediately registered in any Court of competent jurisdiction regardless of whether the time for appeal has expired.

2. Fox's request for fees and costs is hereby **DENIED without prejudice.**

3. It is further **ORDERED** that Defendants, for themselves and their principals, partners, agents, servants, employees, independent contractors, and all persons in active concert and participation with them shall be permanently restrained and enjoined from infringing upon

Plaintiff's trademarks and copyrights, in any manner, including but not limited to the following activities:

    A. Providing, marketing, offering, selling, and distributing services, not authorized by Plaintiff, which copy, reproduce, or utilize Plaintiff's Copyrights or Trademarks, including, but not limited to event services and temporary or 'pop-up' restaurant or bar services;

    B. Manufacturing, marketing, offering for sale, selling, and distributing merchandise, not authorized by Plaintiff, which copy, reproduce, or utilize Plaintiff's Copyrights or Trademarks;

    C. Registering, using, or selling any trademark, trade name, or domain names containing "Moe's Tavern," and/or any confusingly similar terms, and from encouraging or assisting any third party to do the same, in connection with any goods or services related or similar to those of Plaintiff;

    D. Committing any act which is likely to falsely cause consumers to believe that Defendants or any goods or services offered by Defendants are provided or offered under the control or supervision of Plaintiff, in any way affiliated with Plaintiff, or otherwise sponsored or approved by Plaintiff;

    E. Otherwise unfairly competing with Plaintiff.

4. It is further **ORDERED** that Defendants SHALL immediately:

    A. Terminate and permanently delete all user accounts, and online content associated with such accounts, relating to or utilizing Plaintiff's Copyrights or Trademarks in an unauthorized manner;

    B. Cease use of, and cancel the domain registration for and

   moestavernpopup.com pursuant to 15 U.S.C. §1125;

C. deliver to Plaintiff's counsel for destruction, within twenty (20) days of entry of this Order, any and all of the following items or materials in Defendants' possession or under their control:

 a. Items utilized in the creation and provision of the infringing 'pop-up' events, including, but not limited to exterior facades, sets, props, set dressings, decorations, signage, costumes, and three-dimensional reproductions;

 b. Counterfeit or infringing merchandise bearing any of Plaintiff's Properties or a simulation, reproduction, counterfeit, copy, or colorable imitation thereof;

 c. Advertising or marketing materials which utilize Plaintiff's Copyrights or Trademarks in conjunction with the Infringing Services and/or Infringing Goods described above.

5. The Court retains jurisdiction of this action for further interpretation or execution of this Order.  See <u>Harthman v. Witty</u>, 480 F.2d 337, 339–40 (3d Cir. 1873).

6. The Clerk of Court **SHALL close** this case.

                **AND IT IS SO ORDERED.**

                 */s/ Paul S. Diamond*
                 _____
                 Paul S. Diamond, J.